**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COMMUNITY VOCATIONAL SCHOOLS OF PITTSBURGH, INC.**, a corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) ) | CIVIL ACTION NO. 09-1572 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **MILDON BUS LINES, INC.,** a Pennsylvania corporation, | ) ) ) | |
| Defendant/ Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| **CAROLINE ABRAHAM** and **JOEL ABRAHAM**, | ) ) ) | |
| Third Party Defendants. | ) | |

**MEMORANDUM OPINION**

Conti, Chief District Judge

## I.     Introduction

Plaintiff Community Vocational Schools of Pittsburgh, Inc. ("plaintiff" or "Community Vocational Schools") brings this action under the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227.  Presently pending before this court is the motion for summary judgment filed by defendant Mildon Bus Lines, Inc. ("defendant" or "Mildon").   (ECF No. 93.)   For the reasons fully explained in this opinion, Mildon's motion for summary judgment will be granted because Community Vocational Schools lacks standing and because there is insufficient evidence from which a reasonable jury could find that Mildon violated the TCPA with respect to Community Vocational Schools.

1

## II.  Procedural History

Community Vocational Schools initiated this action on November 30, 2009, against Mildon advancing a claim under the TCPA for sending an unlawful facsimile advertisement.  (ECF No. 1.)  Mildon filed a motion to dismiss on February 3, 2010, (ECF No. 4), and in response, Community Vocational Schools filed its first amended class action complaint on February 11, 2010.  (ECF No. 7.)  Specifically, Community Vocational Schools alleges that Mildon on or about January 11, 2006, sent one unsolicited advertisement to it by telephone facsimile machine in violation of the TCPA.  (ECF No. 7, ¶¶ 10, 12.)  On February 16, 2010, Erie Insurance Exchange ("Erie") filed a claim against defendant, in the Court of Common Pleas of Allegheny County at Erie Ins. Exch. v. Mildon Bus Lines, Inc. & Community Vocational Sch. of Pittsburgh, Alleg. Cty. Ct. of Common Pleas, Civil Action No. GD-10-003030 ("coverage action"), concerning insurance coverage with respect to this action.  Mildon filed a motion to dismiss the amended complaint filed in this action on February 18, 2010.  The motion to dismiss was denied without prejudice on August 6, 2010, just prior to Mildon filing for bankruptcy.  (Status Conference 8/26/10; ECF Nos. 13, 26.)

On July 27, 2010, Mildon filed for bankruptcy in In re Mildon Bus Lines, Ins., Bankruptcy Action No. 10-25312, in the United States Bankruptcy Court for the Western District of Pennsylvania.  A suggestion of bankruptcy was filed in the instant action on September 22, 2010. (ECF No. 26.)  That same day, this court issued a stay pending resolution of Mildon's bankruptcy proceedings.  (ECF Nos. 26, 27.)  The bankruptcy court, in light of Mildon's possible insurance coverage, lifted the automatic stay to permit the coverage action to proceed to the extent of the

coverage. (Bankruptcy Action No. 10-25312, ECF No. 79.) The bankruptcy case was terminated on October 23, 2012, with the defendant receiving a discharge. (ECF Bankruptcy No. 85.)

After the termination of the bankruptcy action, this court continued the stay of this matter pending the resolution of the summary judgment motions filed by Erie and Community Vocational Schools in the coverage action. (ECF No. 64 at 2.) On November 22, 2016, after being advised that summary judgment was denied in the coverage action, this court held a status conference, at which point, this court lifted the stay and reopened the case and ordered fact discovery to be completed on or before February 15, 2017. (ECF No. 49.) Due to the bankruptcy and ensuing coverage litigation, this case had been stayed for approximately six years and four months and this matter has been active in this court for only one and a half years.

After the stay was lifted, Mildon filed its answer and affirmative defenses on December 15, 2016. (ECF No. 50.) On December 20, 2016, with leave, Mildon filed a third-party complaint joining Caroline Abraham and Joel Abraham as third-party defendants. (ECF Nos. 52, 53.) On January 30, 2017, this court granted Community Vocational Schools' unopposed motion to extend fact discovery and ordered that discovery be completed on or before May 15, 2017. (ECF No. 62.) Erie filed a motion for leave to intervene pursuant to Federal Rule Civil Procedure 24 on February 1, 2017, (ECF No. 64), which was denied on March 27, 2017, with prejudice. (ECF No. 80.) On April 18, 2017, default was entered against the third-party defendants.[1] (ECF Nos. 89-90.)

After the close of discovery, on July 7, 2017, Mildon filed its motion for summary judgment, (ECF No. 93), brief in support thereof, (ECF No. 94), and concise statement of material

---

[1] Presently pending before this court is Mildon's motion for default judgment against third-party defendants Caroline Abraham and Joel Abraham. (ECF No. 83.) Because of this court's ruling on the motion for summary judgment and the allegations in the motion for default judgment, the court will deny the motion for default judgment without prejudice and permit a renewed motion to be filed after the court holds a status conference.

facts. (ECF No. 95.) On August 7, 2017, Community Vocational Schools filed its response in opposition to Mildon's motion for summary judgment, (ECF No. 105), and to Mildon's concise statement of material facts. (ECF No. 106.) Mildon filed a reply brief on August 28, 2017, (ECF No. 107), along with a reply to Community Vocational Schools' concise statement of material facts. (ECF No. 108.) The parties filed their combined statement of material facts ("CCSMF") on September 7, 2017, as required by this court's Chamber Rule 3.F.c.ii. (ECF No. 110.) A hearing on the motion for summary judgment was held on September 19, 2017, and the parties were ordered to file supplemental briefs. (Minute Entry & Order 9/20/2017.) Community Vocational Schools filed its supplemental brief on September 26, 2017. (ECF No. 112.) Mildon filed its response in opposition on October 3, 2017. (ECF No. 113.) This matter is now ripe for disposition.[2]

## III.   **Background**[3]

In January 2006, Caroline and Joel Abraham d/b/a as Business to Business Solutions ("B2B") contacted Mildon about hiring B2B to write, design, and transmit a facsimile advertisement on Mildon's behalf.[4] (CCSMF ¶ 1.) On January 10, 2006, Mildon sent a check in the amount of $268.00 to B2B as consideration for 5,000 faxed advertisements. (Id. ¶ 2.) Mildon,

---

[2] Plaintiff also filed a motion to certify the class. (ECF No. 97.) Because of this court's ruling on the motion for summary judgment, the motion to certify the class will be denied without prejudice by separate order.

[3] Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). See (ECF No. 7, ¶ 7.) The factual background is taken from the undisputed evidence of record, including the parties' Combined Statement of Material Facts, which synthesizes Mildon's Concise Statement of Material Facts with Community Vocational Schools' responses stated in his opposition, (ECF No. 110); evidence not properly disputed on the record; and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[4] B2B ran multiple phone lines for faxing into the Abrahams' residential home, approximately twenty-eight to twenty-nine lines, which were connected to various modems so that multiple facsimile advertising campaigns could be run simultaneously daily for multiple clients. (Id. ¶ 34.)

however, never received any documentation from B2B that the fax campaign had occurred.  (Id. ¶ 3.)

As part of a separate litigation action in the United States District Court for the District of New York ("New York action"), to which Community Vocational Schools was not a party, present counsel for Community Vocational Schools obtained in discovery a DVD and a hard drive belonging to B2B.  (Id. ¶ 7; ECF No. 98-3.)  On the hard drive, Community Vocational Schools located what it believes to be a copy of a facsimile advertisement sent to it and which it attached as Exhibit A to its first amended complaint.  (CCSMF ¶¶ 4, 6-7.)  Its counsel provided the DVD and the hard drive to Robert Biggerstaff ("Biggerstaff") for purposes of this action.[5]  (CCSMF ¶ 8.)  Community Vocational Schools filed this action though the counsel that obtained the DVD and hard drive in the New York action and is using the same expert, Biggerstaff.

As part of this case, Biggerstaff was asked to review and analyze the DVD and hard drive with respect to records and any recorded fax transmissions related to Mildon.  (CCSMF ¶¶ 8, 15.) In response, Biggerstaff located two archived directories on the DVD dated January 11, 2006, that contained an image file and xferfaxlogs from HylaFAX software.  (Id. ¶ 16.)  Biggerstaff found no additional logs related to Mildon.  (Id. ¶ 17.)  Biggerstaff testified that the xferfaxlogs were created by the HylaFAX software used by B2B for facsimile advertising campaigns and reflect how many pages had been confirmed as faxed/sent/received by the positive confirmation process in the T.30 fax transmission standard.  (Id. ¶ 18.)

---

[5] Biggerstaff has been the expert in numerous cases involving this hard drive and DVD and has been an expert in over 100 cases involving B2B.  (ECF No. 96-3, at 9-10.)

Biggerstaff describes the five-phase confirmation process as follows: (1) Call establishment; (2) Pre-message procedure; (3) In-message procedure and message transmission, (4) Post-message procedure, and (5) Call release. (ECF No. 98-4.) He explains:

> Because a record of a successful transmission by a computer based facsimile transmission system capable of sending standard T.30 fax transmissions, reflects the successful completion of all 5 phases of the T.30 fax transmission to a device with a fax-modem, and every device with a fax-modem capable of receiving a T.30 fax transmission has the capacity to print the contents of that transmission, a record of a successful transmission by computer based facsimile transmission is a record that such a transmission was sent to and received by "equipment which has the capacity to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."

(Id.)

Biggerstaff admitted, however, that the logs by their nature do not show what was sent and, therefore, the logs do not show whether or not the alleged fax attached as Exhibit A to the Amended Complaint was sent or whether there was an image rendering issue. (ECF No. 96-3, 189.) The only way to determine what actually was sent, if anything, would be to review the Doc Q file, which was not found on Biggerstaff's review of the DVD and hard drive.[6] (Id. at 190.) According to Biggerstaff, Doc Q files are routinely erased because they take up an enormous amount of space on a computer's hard drive. (ECF No. 96-3, 190-91.) Plaintiff does not, however, provide any forensic evidence through Biggerstaff or otherwise that a Doc Q file has been erased or even existed on the DVD or hard drive with respect to Mildon. The fax logs indicate that Community Vocational Schools' phone line was occupied for one minute and sixteen seconds on January 11, 2006, by a facsimile transmission from B2B on behalf of Mildon. (ECF No. 98-4.)

---

[6] There is nothing to indicate that Mildon or B2B would have erased a Doc Q file with respect to the Mildon campaign.

Notably, Community Vocational Schools does not have a copy of a facsimile log/report or transmission history from Community Vocational Schools' facsimile machine that identifies the date and time at which it allegedly received the facsimile transmission/advertisement from Mildon. (Id. ¶ 5.)  Community Vocational Schools does not have the physical copy of the facsimile that it purportedly received, even though it was collecting faxes for the purpose of bringing an action, and did not keep its facsimile machine either.  (CCSMF ¶¶ 4, 5.)

Richard Gans ("Gans"), Vice President of Community Vocational Schools and Community Vocational Schools' representative in this matter, testified at his deposition that Community Vocational Schools had a policy of collecting the junk faxes it received and forwarding them to its attorney.  (ECF No. 97-1, at 19.)  From 2005-2006, Community Vocational Schools collected all the junk faxes that it received each day and sent them along to the corporate office once a week, and the corporate office would forward them along to its attorney for the purpose of filing a lawsuit. (Id. at 19-20.)  Specifically, Gans testified:

> Q: Is that how you came to be aware of Mildon Bus Lines, from Attorney Max Margulis?
>
> A: Well, I sent faxes to him that were received in all of our schools, approximately, at one point, 250 a week, and among the faxes that I provided him may have been a Mildon fax.
>
> Q: And you provided these faxes to Mr. Margulis when?
>
> A: Weekly.
>
> Q: In what year?
>
> A:  From 2001 to present.  . . . .

Q: What direction, for instance, would you have given to John Casablancas Modeling & Career Centers in Pittsburgh,[7] regarding what they should do with faxes that came across their machine?

A: They should put them in a pile and send them to the corporate office once a week.

Q: Was John Casablancas Modeling & Career Centers, in 2005, 2006, complying with your direction?

A: Yes. . . .

Q: And you would take those faxes and turn them all over to Attorney Margulis?

A: Yes.

(Id. at 19-20.)  Gans testified that he could not recall the fax claimed to be sent here or identify any employee or representative of Community Vocational Schools who would have knowledge about the actual receipt of the alleged fax.[8]  (ECF No. 94, Ex. E.)

Biggerstaff was able to identify Exhibit A attached to Community Vocational Schools' first amended complaint as a portable document format ("PDF") image found on the B2B hard drive.  (CCSMF ¶ 9.)  Biggerstaff testified that as part of the process of faxing an advertising campaign, any actually faxed document would have been converted to a bitmap file prior to sending.  (ECF No. 96-3, 86.)  Biggerstaff admitted that he has never seen a printout of any advertisement actually faxed as part of the Mildon campaign, and that an actual bitmap of the PDF file that would have been created by the conversion of a bitmap file for transmission was not found on the hard drive.  (CCSMF ¶ 11.)

---

[7] Community Vocational Schools used Jack Casablancas Modeling & Career Centers as a trade name.  (ECF No. 98-2, 10-11.)

[8] Gans testified that he has been deposed or has verified complaints or answers to discovery in twenty to fifty TCPA cases, (ECF No. 97-1, 5-6), although not all the cases involve Community Vocational Schools, (Id. at 5.)

Biggerstaff testified that the hard drive provided to him by Community Vocational Schools' counsel does not contain any files showing an image that was rendered by the faxing software, HylaFAX, for Mildon. (Id. ¶ 12.) Biggerstaff explained that files that would show an actually faxed document were typically erased and deleted as part of the ordinary conduct of business in the industry and by inference by B2B. (ECF No. 96-3, 189-90.) Caroline Abraham testified that the images found on the hard drive were not an actual image of any completed received fax because the receiving fax machines would have included date and time stamps as part of the fax number. (CCSMF ¶ 13.)

Biggerstaff indicated that he "believes" that the fax advertisement was successfully transmitted based on the source code and logs contained on the hard drive that confirm through a positive-confirmation process that a one-page fax went through with no error detected or recorded. (Id. ¶ 19.) Biggerstaff testified that in order to limit the possibility that a wrong file would be sent to the wrong list, the files were named by B2B using the client or customer name. (ECF No. 96-3 at 144.) Mildon's campaign files and folders found on the disk were named "Esther" or "Mildon Bus Lines." (Id. at 144-45.) Biggerstaff infers that a TCPA violative fax was sent because the fax logs reflect an error-free fax transmission occurred and he found a pdf of an advertisement on the DVD. (ECF No. 96-3 at 64-65.)

Caroline Abraham, who along with Joel Abraham did business as B2B, provided testimony at a deposition in a separate matter that the Mildon advertising campaign had rendering problems, (CCSMF ¶ 22), meaning the faxes were going out blank "or something", and she did not know what was wrong, but during this time they were showing up like they had been delivered, (ECF No. 96-11, 153.). She testified that they had resent everything after the rendering problem was

discovered, (ECF No. 96-11, 153.)[9]  Biggerstaff testified that he could not find any reason why Caroline Abraham said there had been a rendering problem during the Mildon campaign, (ECF No. 96-3 at 179), but also admitted that he could not eliminate the possibility of rendering problems having occurred outside of the one he had identified with respect to the Veranda font.  (Id. at 199.) Biggerstaff testified that the Veranda font was not used in the fax purported to be sent in this case. (Id. at 96-3 at 174.)  After discovering the rendering problem with the Mildon fax campaign, B2B began regularly using verification faxes beginning January 12, 2006, the day after the purported fax was sent to Community Vocational Schools.  (CCSMF ¶ 32; ECF No. 96-3 at 171-72.)  During the week of January 11, 2006, after the purported advertisement was already sent, B2B instead of using a PDF began using a tagged image file format (which itself was a bitmapped image). (CCSMF ¶ 33; ECF No. 96-3 at 184, 191.)

## IV.     <u>Arguments</u>

Mildon specifically asserts that 1) Community Vocational Schools lacks standing because Community Vocational Schools cannot prove that it sustained a concrete injury that falls within the zone of interest sought to be protected by the TCPA; and 2) it is entitled to summary judgment because there is insufficient evidence that Mildon sent a fax advertisement to Community Vocational Schools in violation of the TCPA.  Mildon points out that Community Vocational Schools has no record of receiving the fax, businesses have no privacy interest in being left alone, and there is no concrete proof that the alleged fax interrupted Community Vocational Schools' business.  Mildon argues that the lack of evidence to show a fax was received demonstrates

---

[9] No evidence was adduced demonstrating that a Mildon fax was resent to Community Vocational Schools after the rendering problem.  Caroline Abraham testified on numerous occasions that a rendering problem had occurred.  (ECF Nos. 96-7 at 183, 96-8 at 111; 96-9 at 80-82; 96-10 at 71-76; 96-11 at 153; 96-12 at 165-167.)

Community Vocational Schools lacks standing, i.e., Community Vocational Schools failed to adduce sufficient evidence to find that it suffered an injury in fact. Mildon asserts that Community Vocational Schools did not suffer an injury in fact because: 1) Community Vocational Schools' representative, Gans, has no recollection of receiving the fax; and 2) Community Vocational Schools' expert, Biggerstaff, cannot demonstrate that an unsolicited advertisement was indeed transmitted to it.

Community Vocational Schools, citing Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., 781 F.3d 1245 (11th Cir. 2015), responds that other courts have found standing where the plaintiff failed to retain or could not recall having received a fax sent by B2B.[10] Mildon, in its reply, argues that it is undisputed that rendering issues occurred during the time frame of the alleged Mildon campaign, from January 11, 2006, through January 16, 2006; that HylaFAX logs would record successful transmissions despite rendering issues; that there is no way to know what was actually transmitted, if anything; and that the hard drive contains no proof that an "advertisement" was sent.

---

[10] With respect to an unsolicited faxed advertisement sent by B2B on December 13, 2005, the United States Court of Appeals for the Eleventh Circuit stated:

> While the record does not demonstrate that the fax advertising Defendant's dental practice was printed or seen by any of Palm Beach Golf's employees, there is unrefuted record evidence that the fax information was successfully transmitted by B2B's fax machine and that the transmission occupied the telephone line and fax machine of Palm Beach Golf during that time.

Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., 781 F.3d 1245, 1251 (11th Cir. 2015) (emphasis added). The unrefuted evidence was an expert report that confirmed "the successful fax transmission. . . . ." Id. at 1249. Here, Mildon contests the expert's opinions by pointing to, among other things, the insufficiency of the evidence and the rendering problem that occurred during the Mildon fax campaign.

During the hearing on September 19, 2017, the parties were ordered to file supplemental briefs with respect to the effect on this case of Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), and its progeny. Community Vocational Schools argues that since Spokeo, numerous courts have addressed standing under the TCPA and have been nearly uniform in finding that a transmission that is a violation of the TCPA confers standing because it illegally occupies the plaintiff's phone line. Community Vocational Schools argues that it has standing under Spokeo because the TCPA elevated the "nuisance" of having one's phone line occupied by an unsolicited fax advertisement to a "legally cognizable injury" and its fax line was occupied for one minute and sixteen seconds. Mildon responds that Community Vocational Schools failed to adduce sufficient evidence to show that the occupation of its fax machine was based on an "unsolicited advertisement" as defined under the TCPA, or that the fax provided as Exhibit A to the amended complaint was sent on behalf of Mildon. Mildon argues that Community Vocational Schools has no evidence that a fax was received or that Community Vocational Schools' fax machine was tied up by a fax advertisement within the meaning of the TCPA.

## V.      Standards for Standing and Summary Judgment

### A.      Standard for Standing[11]

"Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to 'Cases' and 'Controversies.'" Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 538-39 (3d Cir. 2017) (quoting U.S. CONST. art. III, § 2)). "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and

---

[11] Although the parties do not address statutory standing, it bears mentioning that in Leyse v. Bank of America National Association, 804 F.3d 316, 322-23 (3d Cir. 2015), the Court of Appeals for the Third Circuit determined that a plaintiff who actually receives an automated telemarketing call, even though not the intended recipient, has statutory standing. Thus, the actual receipt of the call was determinative for statutory standing.

properly limited—role of the courts in a democratic society.'" Plains All Am. Pipeline L.P. v. Cook, 866 F.3d 534, 539 (3d Cir. 2017) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)). Standing is one of the justiciability doctrines rooted in the case-or-controversy provision and affects the subject-matter jurisdiction of the court by limiting who can pursue their claims in federal court. Cottrell v. Alcon Labs, 874 F.3d 154, 162 (3d Cir. 2017); Hamilton v. Bromley, 862 F.3d 329, 334 (3d Cir. 2017); Leyse v. Bank of Am. Nat. Assoc., 804 F.3d 316, 321 (3d Cir. 2015). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, 136 S. Ct. at 1547. Because constitutional standing implicates this court's subject-matter jurisdiction, it is addressed as a threshold matter. Taha v. County of Bucks, 862 F.3d 292, 301 n.4 (3d Cir. 2017).

Constitutional standing must exist at *all* stages of litigation. Knick v. Twp. of Scott, 862 F.3d 310, 318-19 (3d Cir. 2017). The plaintiff bears the burden of proof on standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Depending on the stage of litigation, the plaintiff's burden of proof on standing varies because each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Id. (emphasis added). Where standing is raised on summary judgment, the plaintiff must "'set forth' by affidavit or other evidence 'specific facts'" that establishes its standing. Id. (quoting Fed. R. Civ. P. 56(e). Thus, Community Vocational Schools bears the burden of proving the minimal constitutional requirements for standing: injury in fact, causation, and redressability. Knick, 862 F.3d at 317.

## B.     Standard for Summary Judgment

Summary judgment may be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986). In evaluating the evidence, the court must interpret the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences and doubts in the nonmoving party's favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). In doing so, however, a court cannot make credibility determinations. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 322, 325; Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. FED. R. CIV. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48; Celotex, 477 U.S. at

323-25. The nonmoving party must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, opposing party admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Celotex, 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her own pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 323-24. The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248-49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. Liberty Lobby, 477 U.S. at 248.

A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more of those elements. Celotex,

477 U.S. at 322-23.  If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law.  Liberty Lobby, 477 U.S. at 249.  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every challenged] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v. Varner, 247 F. A'ppx 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).  Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## VI.    Discussion

### A.    The TCPA and its Junk Fax Provisions

The TCPA is a remedial consumer protection statute.[12]  Gager v. Dell Financial Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013).  As a result, the court must construe the TCPA's statutory language "broadly to effect its purpose."  Klein v. Commerce Energy, Inc., 256 F.Supp.3d 563, 577 (W.D. Pa. 2017).  If proposed interpretations of the TCPA, including its Junk Fax provisions,

---

[12] The Federal Communications Commission ("FCC") is authorized by Congress to "prescribe regulations to implement the requirements of [the TCPA]."  § 277(b)(2).

are equally plausible, the scales tip in favor of the plaintiff consumer.  <u>Leyse v. Bank of America</u> <u>Nat. Ass'n</u>, 804 F.3d 316, 327 (3d Cir. 2015).

The TCPA creates a private cause of action and makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless the sender and recipient of the unsolicited advertisement are in an established business relationship, the number was provided voluntarily to the recipient by the sender, or the unsolicited advertisement contains a notice meeting the TCPA's enunciated requirements in § 227(b)(2)(D).  47 U.S.C. §§ 227(b)(1)(C) & (b)(3).  An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  <u>Id.</u> § 227(a)(5).  "Importantly, Congress intended that non-commercial faxes fall outside the TCPA's prohibition."  <u>Physicians Healthsource, Inc. v.</u> <u>Janssen Pharm., Inc.</u>, Civ. Act. No. 12-2132, 2013 WL 486207, at *2 (D. N.J. Feb. 6, 2013).

The legislative history of the TCPA reflects that "[b]usinesses also [ ] complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce."  Pub. L. No. 102-243, § 14.  In enacting the TCPA, Congress intended to remedy the telemarketer's attempts to "shift[] some of the costs of advertising from the sender to the recipient" like ink and paper and the telemarketer "occup[ying] the <u>recipient's</u> facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax."  H.R. Rep. No. 102-317, at *10 (1991) (emphasis added); <u>see</u> <u>Missouri ex rel. Nixon v. Am. Blast Fax, Inc.</u>, 323 F.3d 649, 654-55, 657 (8th Cir. 2003).  If a defendant violates the TCPA, a plaintiff is entitled to have

the violation enjoined, recover damages for the violation, or both. 47 U.S.C. § 227(b)(3). If a defendant willfully or knowingly violates the TCPA, the court may award treble damages. Id.

B.    **The Standing of Community Vocational Schools**

Of paramount importance in this case is standing's "injury in fact" requirement. The Supreme Court of the United States most recently clarified the injury in fact requirement necessary to establish standing in Spokeo, Inc. v. Robins, 136 S. Ct. at 1548-49. The plaintiff in Spokeo brought an action under the Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), after the plaintiff discovered that inaccurate information about him could be obtained through the website of Spokeo, Inc. ("Spokeo"). Id. at 1544. Specifically, Spokeo's website contained statements that the plaintiff was married, had children, was in his "50s", had a job, was relatively affluent, and held a graduate degree; all of which was untrue. Id. at 1546.

The Supreme Court began its discussion of the injury in fact requirement by stating that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Id. at 1547-48 (quoting Raines v. Byrd, 521 U.S. 811, 820 n.3 (1997)). A "bare procedural violation, divorced from any concrete harm" will not confer standing. Spokeo, 136 S. Ct. at 1549. The Court explicated that "[t]o establish [an] injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560).

An injury is "particularized" if it "'affect[s] the plaintiff in a personal and individual way.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560 n.1). For an injury to be "concrete", it "must be '*de facto*'; that is, it must actually exist". Spokeo, 136 S. Ct. at 1548. Concrete injuries include tangible and intangible injuries. Id. at 1549. Where an injury is intangible, in order for it

to rise to the level of an injury in fact, "both history and the judgment of Congress play important roles." Id. With respect to history, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." Id. Congress' judgment is also instructive and "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" Id. (quoting Lujan, 504 U.S. at 578).

"Congress is well positioned to identify intangible harms that meet minimum Article III requirements," Spokeo, 136 S. Ct. at 1548; however, the Court cautioned specifically that

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right[;] Article III standing requires a concrete injury even in the context of a statutory violation.

Id. The Court explained that although "Congress plainly sought to curb the dissemination of false information" with its enactment of the FCRA, a bare procedural violation would be insufficient to satisfy Article III's standing requirement. Id. at 1550. The Supreme Court remanded the case because the Court of Appeals for the Ninth Circuit had failed to address this concreteness requirement. Id. at 1544-45.

In In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262 (3d Cir. 2016), the Court of Appeals for the Third Circuit explained that the Supreme Court's holding in Spokeo did not alter prior Third Circuit precedent. Id. at 272-73. Additionally, the court noted that "in some cases an injury-in-fact 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Id. at 273 (quoting In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 134 (3d Cir. 2015)). In fact, standing may exist "even absent evidence of actual monetary loss." In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 636

(3d Cir. 2017). Nonetheless, "there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact." Id. at 638. Because a technical violation was not before the court, it declined to address "the full reach of congressional power to elevate a procedural violation into an injury in fact." Id.

In In re Horizon Healthcare Services Inc. Data Breach Litigation, the Third Circuit Court of Appeals described the concreteness test in Spokeo as follows:

> There are thus two tests for whether an intangible injury can (despite the obvious linguistic contradiction) be "concrete." The first test, the one of history, asks whether "an alleged intangible harm" is closely related "to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." . . . . If so, it is likely to be sufficient to satisfy the injury-in-fact element of standing. . . . But even if an injury was "previously inadequate in law," Congress may elevate it "to the status of [a] legally cognizable injur[y]." The second test therefore asks whether Congress has expressed an intent to make an injury redressable.

Id. (quoting Spokeo, 1366 S. Ct. at 1549)) (internal citations and quotations omitted) (final two alterations in original).

In Susinno v. Work Out World Inc., 862 F.3d 346 (3d Cir. 2017), a recent TCPA case, the Third Circuit Court of Appeals considered, *inter alia*, whether the plaintiff had sustained a sufficiently concrete injury for Article III standing. Id. at 348. The plaintiff in Susinno alleged that defendant, a fitness company, violated the TCPA when it called her cell phone without her prior expressed permission and left a one-minute voicemail that was a prerecorded promotional offer. Id. at 348.

The court of appeals explained the rule it set forth in Horizon:

> When one sues under a statute alleging "the very injury [the statute] is intended to prevent," and the injury "has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts," a concrete injury has been pleaded. . . . We do not, and need not, conclude that intangible injuries falling short of this standard are never concrete . . . . Rather, we simply observe that all intangible injuries that meet this standard *are* concrete.

Id. at 351 (quoting In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d at 638-40) (emphasis in original) (first three alterations in original). Applying this test, the court of appeals found plaintiff's injuries in Susinno were concrete. Id.

First, the court found that a single prerecorded phone call was the type of "nuisance and invasion of privacy" that Congress sought to prevent with the TCPA. Id. Second, the court of appeals turned to the historical inquiry and explained that this test requires that the cause "of action protect essentially the same interests that traditional causes of action sought to protect." Id. The court of appeals concluded that in enacting the TCPA, Congress had elevated a harm, a single phone call, that, while previously inadequate at law, was of the same character as previously existing legally cognizable injuries. Id. at 351-52.

Unlike courts in other jurisdictions, the Court of Appeals for the Third Circuit in reaching its decision in Susinno, did not declare that a mere TCPA violation is always an injury that is sufficiently concrete for purposes of standing but rather engaged in the two-part analysis that it set forth in Horizon. Compare Susinno, 862 F.3d at 350-351 (explaining "we hold that the TCPA provides Susinno with a cause of action, and that her injury satisfies the concreteness requirement for constitutional standing") (emphasis added); with, e.g., Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1252 (11th Cir. 2015) (explaining that the TCPA creates a cognizable right), and Swetlic Chiropractic & Rehab. Ctr., Inc., 235 F.Supp.3d 882, 888 (S.D. Ohio 2017) (providing that "the receipt of an impermissible fax constitutes a concrete and particularized injury") (emphasis added).

In fact, in a decision post-Spokeo, one judge in this district found that a professional plaintiff did not have standing even in the presence of a clear TCPA violation where the plaintiff had purchased thirty-five cell phones and cell phone numbers with the "hope" of being able to file

numerous TCPA claims.  Stoops v. Wells Fargo Bank, N.A., 197 F.Supp.3d 782, 788, 800 (W.D. Pa. 2016).  In Stoops, the district court found that the professional plaintiff could not establish an injury in fact "[b]ecause [p]laintiff ha[d] admitted that her only purpose in using her cell phones [was] to file TCPA lawsuits, the calls [were] not 'a nuisance and an invasion of privacy'" from which Congress in enacting the TCPA intended to protect consumers.  Id. at 800 (quoting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7890 (2015)).  While it is arguable that as a matter of policy the mere use of a fax line for one minute and sixteen seconds without anything further is the sort of nuisance that Congress was trying to prevent in enacting the TCPA, this case does not turn on that issue.[13]

Even applying the more lenient standard that other jurisdictions have adopted, i.e., that a mere TCPA violation is sufficient for Article III standing, Community Vocational Schools did not proffer sufficient evidence to meet its burden to show that is has standing.  It did not advance sufficient evidence to show that it actually received a faxed advertisement or that a faxed advertisement was sent and tied up its fax line, i.e., it sustained an injury by receiving or being sent an unsolicited advertisement fax, which is the very injury Congress was seeking to prevent in enacting the TCPA.  See Susinno, 862 F.3d at 351; Broking v. Green Brook Buick GMG Suzuki, Civ. Act. No. 15-1847, 2017 WL 3610490, at *8 (D. N.J. Aug. 22, 2017); City Select Auto Sales, Inc. v. David Randall Assocs., Inc., 296 F.R.D. 299, 310 (D. N.J. 2013).

---

[13] The evidence does not reveal that Community Vocational Schools was only capable of receiving one fax at a time, and thus was unable to receive faxes during a transmission.  Indeed, the evidence is that Community Vocational Schools could receive at least six communications at a time due to it having six lines.  (ECF No. 97-1, at 26.)  It is not clear from this evidence whether a phone line would have actually been tied up by an incoming fax.  Even though the plaintiff bears the burden on standing, it provided no evidence that it was unable to receive faxes during the one minute and sixteen second transmission, any paper was used, or any ink was lost.

There is insufficient evidence to demonstrate that Exhibit A in the Amended Complaint was sent or received. Community Vocational Schools had a specific procedure set up to collect junk faxes that might give rise to a TCPA junk fax claim. Community Vocational Schools' representative could not recall receiving a Mildon advertisement fax and was not aware of anyone who would be able to recall receiving that kind of fax. Indeed, there is no evidence that Community Vocational Schools perceived that any injury may have occurred until after someone contacted it for purposes of this lawsuit.[14] Additionally, there is no verification fax; there is no bitmap file, there is no fax with a fax header indicating whether the fax was sent or received; Community Vocational Schools does not have a copy of the facsimile log/report or transmission history from its fax machine, and it no longer has its fax machine. There is no Q file to explain exactly what was sent to Community Vocational Schools. To compound the issue, Caroline Abraham, who was responsible for sending the fax as part of a fax advertisement campaign, testified that a rendering problem occurred during the Mildon campaign.[15]

This case is distinguishable from Palm Beach Golf Center-Boca v. John G. Sarris, D.D.S. due, among other things, to the rendering problem that occurred during the purported Mildon campaign. Caroline Abraham testified that there was a rendering problem during the Mildon campaign. Biggerstaff was not able to explain why that problem occurred, but asserts that Caroline Abraham's recollection must have been mistaken because the only rendering problem that he was able to identify was one relating to the Veranda font, which was not used in the Mildon advertisement. He admitted, however, that he cannot eliminate the possibility that another rendering problem may have occurred.

---

[14] Exactly how this lawsuit came to fruition is not explained by the record.
[15] This court could locate no other case involving a rendering problem that interfered with an advertising campaign.

The only evidence Biggerstaff suggests that indicates that Mildon's advertisement was sent to Community Vocational Schools are the HylaFAX records demonstrating that B2B sent something to Community Vocational Schools. Intent to send a facsimile advertisement is not the same thing as actual sending an unsolicited advertisement a/k/a a violative fax. Biggerstaff identified a PDF file on the B2B hard drive that was created <u>for the purpose</u> of being converted into a file format that <u>would be sent</u> as part of the Mildon campaign, but there is no further evidence to show that the campaign successfully sent the faxed advertisement to Community Vocational Schools. Biggerstaff speculates that the Mildon campaign did occur because in other B2B cases he found "additional records" that demonstrated that the advertisement in those cases had actually been sent. (ECF No. 96-3, at p. 42-43.) For example, in other cases, Biggerstaff explains that the receiving party had the original fax, there was a verification fax, there were telephone-company records, or other things extrinsic to the records to show that an advertisement was sent. (ECF No. 96-3, at p. 42-43.) In this case, no extrinsic evidence was submitted; yet, Biggerstaff is still willing to conclude that Mildon's advertisement was sent. Mere speculation is not evidence. <u>See Schneider ex Rel. Estate of Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003); Fed. R. Evid. 702. Said another way, there is insufficient evidence to determine that what was actually sent was a fax that violated the TCPA or that an unsolicited fax was received. Even considering the facts in the light most favorable to Community Vocational Schools, Community Vocational Schools failed to proffer sufficient evidence demonstrating that a Community Vocational Schools' telephone line was in fact occupied by an advertisement in violation of the TCPA. Accordingly, this court is constrained to conclude that Community Vocational Schools did not sustain a concrete injury.

Similarly, the issue whether the injury is particularized is somewhat intertwined with the cause of action.  See Barett Computer Servs., Inc. v. PDA, Inc., 884 F.2d 214, 219 (5th Cir. 1989).  Community Vocational Schools' injury can be said to be particularized if Community Vocational Schools was affected in a personal and individual way.  See Cottrell, 874 F.3d at 167.  Although the parties did not brief this issue, the court concludes that because Community Vocational Schools cannot show that it was sent or received a TCPA violative fax, Community Vocational Schools also cannot show that it sustained a particularized injury.

### C.    Insufficient Evidence to Establish a Junk Fax Act Claim

Even assuming for the sake of argument that Community Vocational Schools has standing, to survive a motion for summary judgment the plaintiff must point to specific evidence in the record sufficient to establish: "(1) the defendant utilized a 'telephone facsimile machine' to send 'one or more faxes;' (2) that the transmission constituted 'advertisements'; and (3) that the defendant sent the transmissions without the recipient's consent, absent application of one of the statutory exceptions."  City Select Auto Sales, Inc. v. David/Randall Assocs., Inc., 96 F.Supp.3d 403, 416 (D. N.J. 2015).  Here, Community Vocational Schools cannot establish that it was an unsolicited advertisement sent by B2B on behalf of Mildon that "tied up" Community Vocational Schools' telephone line.  As previously stated with respect to standing, there is insufficient evidence to establish that what was sent was an unsolicited advertisement in violation of the TCPA.  There is likewise insufficient evidence for a reasonable jury to determine what was sent; especially considering Mildon's unresolved rendering problems, the volume of business B2B engaged in and Community Vocational Schools' policy of collecting TCPA violative faxes but not being able to produce a fax sent by B2B on behalf of Mildon.  Under those circumstances, a reasonable jury could not render a verdict in favor of Community Vocational Schools.  To find in plaintiff's favor,

a jury would have to speculate that an unsolicited advertisement was sent or received by Community Vocational Schools. Speculation cannot create a material factual dispute. Robertson, 914 F.2d at 382 n.12.

By way of example, one way to show that a violative fax was sent to Community Vocational Schools on behalf of Mildon would be to produce a document with a fax header either in the sender's documents or in the hands of the recipient. There is no such evidence here. Another way would be through testimony from the recipient that it received such a fax, but perhaps did not retain the fax. Here, Community Vocational Schools' representative testified that he did not know if the fax was received despite Community Vocational Schools having specific procedures to retain such faxes. Alternatively, the existence of a bitmap file or a Doc Q file might suffice. The court does not suggest that this is an exhaustive list of what would be required for plaintiff to make out its case, but provides it by way of example to show the kind of evidence that would be sufficient. The court must conclude that there is insufficient evidence for a reasonable jury to find that B2B's facsimile machine was used on behalf of Mildon to send one or more faxes of an unsolicited advertisement to Community Vocational Schools' telephone fax machine or to find that a transmission constituting an unsolicited advertisement was received by Community Vocational Schools in violation of the TCPA.

## VII.   Conclusion

Even considering the facts in the light most favorable to Community Vocational Schools, Community Vocational Schools does not have standing and, even if it did, a reasonable jury could not render a verdict in favor of Community Vocational Schools. Accordingly, summary judgment will be granted in favor of Mildon Bus Lines and against Community Vocational Schools. An

appropriate order will be entered.

DATED:    February 9, 2018

BY THE COURT:

_/s/_ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge